United States District Court
Northern District of California

1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**NORTHERN DISTRICT OF CALIFORNIA**

6
7

| | |
|---|---|
| **FELDENKRAIS GUILD OF NORTH AMERICA,** | CASE NO. 18-cv-2340-YGR |
| Plaintiff, | |
| vs. | **ORDER GRANTING PRELIMINARY INJUNCTION** |
| **FRANK WILDMAN, ET AL.,** | |
| Defendants. | |

8
9
10
11

12          Plaintiff Feldenkrais Guild of North America ("FGNA") filed its complaint alleging

13    trademark infringement and breach of contract, as well as its *ex parte* motion for a temporary

14    restraining order and order to show cause for a preliminary injunction against defendants Frank

15    Wildman and Feldenkrais Movement Institute. (Dkt. Nos. 1, 19.) On May 1, 2018, the Court

16    granted the temporary restraining order and issued its Order to Show Cause Why A Preliminary

17    Injunction Should Not Issue. (Dkt. No. 26.) The parties filed their response and reply, and the

18    matter came on for hearing on May 15, 2018.

19          The Court, having read and considered the papers and pleadings on file, the evidence

20    submitted in support and in opposition, and the arguments of the parties, and for the reasons stated

21    herein, **GRANTS** a Preliminary Injunction under the terms set forth below.[1]

22    **I.     SUMMARY OF FACTS**

23          FGNA is a not-for-profit membership association that promotes and supports the

24    Feldenkrais Method® of somatic education and its practitioners. (Declaration of Nancy Haller,

25    ¶ 3.) The purposes of the FGNA include increasing public awareness of the Feldenkrais Method®

26    of somatic education, certifying and providing opportunities for continuing education of

27    
_____

28          [1] The Court notes that it has set an expedited schedule for trial on the merits of the
complaint. (*See* Dkt. No. 36.)

United States District Court
Northern District of California

1 practitioners, and protecting the quality of the Feldenkrais® work and research in the effectiveness

2 of the Feldenkrais Method® of somatic education. (*Id*.) FGNA first began certifying

3 Feldenkrais® practitioners in 1989. There are about 1300 current members of the FGNA,

4 including over 1150 members offering services throughout the United States. (*Id*. ¶ 6.)

5 **A. FGNA's Trademarks, Service Marks, and Certification Marks**

6 FGNA has been using certain trademarks since as early as the early 1970s, and first

7 obtained trademark registrations covering certain marks in 1985. (*Id.* ¶ 4.) The United States

8 Patent and Trademark Office has issued numerous federal trademark registrations to FGNA, set

9 forth as follows:

| Mark | Registration No. | Date of Registration |
|---|---|---|
| Feldenkrais | 1,374,266 | December 3, 1985 |
| Feldenkrais Method | 1,982,044 | June 25, 1996 |
| Guild Certified Feldenkrais Teacher | 2,187,073 | September 8, 1998 |
| Awareness Through Movement | 1,353,317 | August 6, 1985 |
| ATM | 4,011,600 | August 16, 2011 |
| Functional Integration | 1,286,531 | July 17, 1984 |
| FI | 4,184,962 | August 7, 2012 |

In addition, FGNA owns other trademarks, service marks, and certification marks. (Haller

Decl. ¶10.) For example, FGNA owns the certification mark GCFT$^{CM}$, an acronym for Guild

Certified Feldenkrais Teacher® as well as the certification mark Guild Certified Feldenkrais

Practitioner$^{CM}$ and its acronym GCFP$^{CM}$. Relevant consumers recognize the use of these marks as

certifying that the user is a qualified Feldenkrais® Practitioner or Teacher. (*Id*. ¶ 10.)

FGNA regulates the quality of those persons holding themselves out as practitioners and

trainers of the Feldenkrais Method® of somatic education by controlling the use of the marks.

The FGNA has established rules for those who may use the FGNA Marks. (*Id*. ¶¶ 12-16; Exh. D

FGNA Policy E2.4.2.1 FGNA Service Marks, Certification Marks and Trademarks, hereinafter

"FGNA Marks Policy".) Guild Certified Feldenkrais Practitioners, FGNA Professional Members,

authorized trainees are granted licenses to use certain of the FGNA Marks, subject to enumerated

conditions in the FGNA Marks Policy. (*Id. ¶* 5.) To be eligible to use the FGNA Marks, persons

1    must provide verification of graduation from a professional Feldenkrais Method® training

2    program that has been accredited by FGNA or another recognized international board under

3    approved policies; completion of a "crossover plan" approved by the North American Training

4    Accreditation Board (an entity related to FGNA that is responsible for accrediting training

5    programs); or have been granted an exception to those requirements by the FGNA Board of

6    Directors.  (*Id.* ¶ 13.)  Members must complete: (i) continuing competence requirements, including

7    self-assessment, creation of learning plan; (ii) twenty hours of appropriate continuing education

8    annually; and (iii) 100 hours of professional practice annually.  Members also must agree to

9    comply with FGNA policies.[2]  (*Id*. ¶¶ 14-15.)  Finally, new members must complete the applicable

10   form and pay the applicable fee. (*Id*. ¶ 16.)

11   Certified Feldenkrais® practitioners are allowed to use its trademarks, service marks and

12   certification marks in connection with educational services relating to somatic education, among

13   other services.  (*Id*. ¶ 4.)  FGNA and its authorized licensees have continuously used the FGNA's

14   trademarks, service marks and certification marks in connection with these services for several

15   decades. (*Id*.)  Only people personally trained by Dr. Feldenkrais, graduates of FGNA-accredited

16   training programs, and others who have received authorization from FGNA are eligible to be

17   certified by, to become members of FGNA, and to use the FGNA's trademarks, service marks and

18   certification marks.  (*Id*. ¶ 5.)

19   **B.      Conduct of Wildman and Feldenkrais Movement Institute**

20   From 1978 to January 22, 2018, defendant Wildman was an FGNA member.  He was

21   certified by FGNA as a Feldenkrais® practitioner and was authorized to use the FGNA Marks.

22   He agreed and was obligated to abide by the FGNA code of conduct.  Wildman was president of

23   FGNA during 1997, and was the chair of the FGNA committee that wrote the FGNA standards of

24   practice.  (*Id*. ¶ 17.)

25   Wildman's relationship with the FGNA ended on January 22, 2018, when the FGNA and

26

27   [2] *See* Haller Decl. Exh. D ("E2.3.2.1 The Feldenkrais Method® of Somatic Education

28   Standards of Practice; E2.3.3.2 Code of Professional Conduct; and E2.4.2.1-ED FGNA Service
     Marks, Certification Marks and Trademarks.")

3

1    Wildman entered into a confidential agreement amidst allegations of Wildman's misconduct.

2    (Haller Decl., Exh. E, "the Agreement.")  Under the four-page Agreement, Wildman

3    acknowledged that he is no longer an FGNA member, an FGNA Certified Feldenkrais®

4    Practitioner, nor an FGNA Certified Feldenkrais® Trainer.  (*Id*. §§ 2-4.)  Wildman agreed not to

5    teach or practice the Feldenkrais® Method.  (*Id*. § 8.)  As of the effective date of the Agreement,

6    Wildman agreed to "refrain from using any FGNA trademarks, service mark, or certification

7    marks."  (*Id*. § 5.)  He agreed to "not represent himself or hold himself out as being certified,

8    licensed, accredited by, or otherwise associated with, the FGNA, the Feldenkrais® Method, or any

9    FGNA trademark, service mark, or certification mark."  (*Id*.)  The Agreement requires that

10   Wildman refrain from all use of the FGNA Marks.  (*Id*.)  Under the Agreement, Wildman had

11   until March 22, 2018, to make the changes required.  (Haller Decl. ¶ 26.)  By his own admission,

12   Wildman failed to complete the changes.  (Declaration of Frank Wildman, Dkt. No. 33-3, at ¶13.)

13   This action ensued.

14   **II.    APPLICABLE STANDARD**

15   The Court may grant preliminary injunctive relief in order to prevent "immediate and

16   irreparable injury."  Fed. R. Civ. P. 65(b).  To establish a right to a preliminary injunction, a

17   plaintiff must demonstrate that: (1) it is likely to succeed on the merits; (2) it is likely to suffer

18   irreparable harm absent preliminary relief; (3) the balance of equities tips in its favor; and (4) the

19   injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008);

20   *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1054 (9th Cir. 2009).

21   So long as the plaintiff makes a threshold showing of irreparable harm and likelihood of

22   success on the merits, a stronger showing on one element may offset a weaker showing on

23   another.  *Alliance for Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131-33 (9th Cir. 2011); *see also*

24   *Leiva-Perez v. Holder,* 640 F.3d 962, 966 (9th Cir. 2011).  The *Winter* factors are evaluated on a

25   sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply

26   toward the plaintiff can support issuance of preliminary injunction, so long as the plaintiff also

27   shows that there is a likelihood of the irreparable injury and that the injunction is in the public

28   interest."  *Alliance for Wild Rockies,* 632 F.3d at 1134-35.

4

1    **III.**    **DISCUSSION AND FINDINGS**

2        **A.**      **Likelihood of Success on the Merits**

3        To establish a likelihood of success, plaintiff need not conclusively prove its case or show

4 that it is "more likely than not" to prevail. *Univ. of Tex. V. Camenisch,* 451 U.S. 390, 395 (1981);

5 *Leiva-Perez*, 640 F.3d at 966; *see also Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223,

6 229 (3d Cir. 2011). Rather, a "fair chance" of success is the standard for granting preliminary

7 injunctive relief. *Benda v. Grand Lodge of IAM,* 584 F.2d 308, 315 (9th Cir. 1978). Here, the

8 Court finds that FGNA has established a likelihood of success on the merits of its claims for

9 breach of contract and trademark infringement.

10        ***1.***      ***Breach of Contract***

11        First, as to the breach of contract claims, Wildman concedes that he failed to make all the

12 changes required under the Agreement. (Oppo. at 1:3-4; 4:4-6; Wildman Decl. ¶ 13.) By the time

13 of the application for the temporary restraining order, Wildman and his assistant were only able to

14 remove or revise 70% of the items identified by FGNA's counsel as being in violation of the

15 Agreement. (Wildman Decl. ¶ 13.)

16        Wildman owns, operates, produces, and manages a website at the url

17 FeldenkraisInstitute.org, and is responsible for all content on the website. (Haller Decl. ¶ 26.)

18 Wildman uses this website to market and promote himself and FMI. The required changes to his

19 website at FeldenkraisInstitute.org have not been made and it continues to contain numerous

20 unauthorized uses of the FGNA Marks. Wildman is also the owner, operator, producer and

21 manager of a website at the url "FrankWildmanMovement.org," which he uses to market and

22 promote himself and his business. Wildman has made some required changes to his website at

23 FrankWildmanMovement.org, but not all, such that the website continues to include unauthorized

24 uses of the FGNA Marks. (*Id*. ¶ 27.) Wildman also markets and promotes himself through various

25 social media and social networking platforms such as Facebook, YouTube, and LinkedIn.

26        Each of Wildman's pages on these social media and social networking platforms continue

27

28

1    to contain numerous unauthorized uses of the FGNA Marks. (*Id*. ¶ 28.)[3] In addition, Wildman

2    has failed to remove FGNA Marks from his biography for purposes of promotion of himself and

3    his business. For instance, Wildman's biography for a 1440 Multiversity program states that he is

4    a "Feldenkrais Method® expert," and uses the Feldenkrais Method® trademark five times in one

5    paragraph. By his continued use of the FGNA Marks, Wildman is in violation of the parties'

6    Agreement.[4]

7          In response to the request for injunctive relief, defendants contend that the Court should

8    not grant FGNA equitable relief due to its "unclean hands." Defendants argue that paragraph 8 of

9    the Agreement is an unlawful non-competition agreement barred by California Business &

10    Professions Code section 16600. Based upon the record presently before the Court, defendants'

11    argument is without merit. The Agreement precludes Wildman from "teaching or engaging in the

12    professional practice of the Feldenkrais® Method." It does not prohibit Wildman from teaching

13    or engaging in any professional practice so long as he does not represent that practice to be "the

14    Feldenkrais® Method."

15          Thus, the Court concludes that plaintiff has shown a likelihood of success on the merits of

16    its breach of contract claim.

17

18

---

19       [3] Defendants argued that the evidence of their continued unauthorized uses of the FGNA
Marks was not admissible. To the contrary, and aside from Wildman's own concession of
continued unauthorized use, the declaration of Nancy Haller represented personal knowledge of
20    the facts therein and that "as of today's date" on the date of the declaration, the enumerated
unauthorized uses continued on the social media and social networking platforms used by
21    Wildman. (Haller Decl. ¶¶ 1, 28.) The Court finds the evidence submitted sufficient to establish
22    likelihood of success on the merits here.

23       [4] Defendants argue that FMI is not a party the Agreement, and therefore not bound by it.
Whether or not FMI is a party to the Agreement, or is an alter ego of Wildman, FMI is responsible
24    for its acts of infringement. Use of the FGNA Marks without authorization, in a manner that is
likely to cause consumer confusion, results in trademark infringement. FMI derived its rights to
25    use the FGNA Marks solely from Wildman. When Wildman was authorized to use the FGNA
Marks, that license also was applicable to FMI. Consequently, when Wildman gave up his license
26    to use the FGNA Marks, FMI could no longer use the FGNA Marks based upon Wildman's
27    membership. No evidence was offered to demonstrate that FMI had a license or other right to use
the FGNA Marks independent of Wildman's rights to use them under the FGNA Service Marks
28    Policy.

1                             ***2.          Trademark Infringement***

2            In addition, the Court finds that plaintiff is likely to succeed on its trademark infringement

3 claim.  Based upon the record before the Court, defendants' continued use of the FGNA Marks

4 constitutes trademark infringement.  To succeed on its claim of trademark infringement, FGNA

5 must demonstrate: (1) ownership of a valid and protectable trademark; and (2) defendants' use of

6 the mark is likely to cause consumer confusion, thereby infringing on the plaintiff's rights.

7 *Aurora World, Inc. v. Ty Inc.*, 719 F.Supp.2d 1115, 1141 (C.D. Cal. 2009) (quoting *Dep't of Parks*

8 *& Rec. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)).  When, as here, two

9 marks are identical and used for the same goods, courts have found that the likelihood of

10 confusion is overwhelming, even if no other factors favor a finding of confusion.  *Brookfield*

11 *Communs., Inc. v. W. Coast Ent't. Corp.,* 174 F.3d 1036, 1056 (9th Cir 1999); *see also Lindy Pen*

12 *Co. v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir. 1986) (reversing district court's finding of no

13 likelihood of confusion given "the overwhelming likelihood of confusion resulting from the direct

14 competition of pens with virtually identical marks").[5]  Further, use of the same marketing channels

15 "increase[s] the likelihood of confusion."  *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d

16 601, 606 (9th Cir. 1987) (citing *Sleekcraft,* 599 F.2d at 353).

17            The facts of ownership here are not contested.  FGNA asserts, and defendants do not

18 dispute, that each of its registrations for trademarks are current, presumed valid, in force, and

19 incontestable under 15 U.S.C. section 1065.  All of the FGNA Marks at issue were in existence

20 and in use at the time Wildman was the president of FGNA, and many had been in use or

21 registered many years before he was president.  Similarly undisputed is FGNA's contention that

22 all of its claimed marks, whether trademarks, service marks, certification marks or related

23

24             [5] The Ninth Circuit has developed an eight-factor test to guide the determination of a

25 likelihood of confusion. *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979)
("*Sleekcraft*").  "The *Sleekcraft* factors are intended as an adaptable proxy for consumer

26 confusion, not a rote checklist."  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638
F.3d 1137, 1145 (9th Cir. 2011) (citations omitted).  Given that the marks at issue here are

27 identical and are being used for nearly identical services, and that defendants do no contest the
*Sleekcraft* factors in opposition, the Court does not analyze the showing on each factor in reaching

28 the decision herein.

7

1    common law marks, regardless of registration, have acquired significant good will through the

2    extensive and widespread use.  They are distinctive as a source identifier and certification

3    indicator in connection with the FGNA providing of services and licensing of others to use its

4    marks in connection with the services identified in those registrations and as indicating that the

5    user has met the FGNA's rigorous requirements.  FGNA has invested significant resources to

6    advertise its and its licensee's educational services offered in connection with the FGNA Marks.

7    FGNA is the beneficiary of many third party stories and articles providing significant and positive

8    press coverage to the FGNA services resulting in the development of significant goodwill for the

9    FGNA Marks.

10    The facts regarding confusion are likewise not in serious contention.  Defendants' services

11    are nearly identical to those of FGNA's and its licensees, and both are marketed and promoted

12    through the Internet, key word searching, social media and social networking platforms and direct

13    mail.  The record before the Court indicates that defendants are using marks identical to the FGNA

14    Marks to promote services that are the same services FGNA promotes, licenses, or certifies.

15    (Haller Dec. ¶ 33.)  Consequently, the parties are in direct competition with each other.

16    Defendants contend that they are not liable for trademark infringement because they are

17    simply making "fair use" of the trademarks in their webpages and other marketing materials.  A

18    nominative fair use is one that "does not attempt to capitalize on consumer confusion or to

19    appropriate the cachet of one product for a different one . . . . [but instead is a use] where the only

20    word reasonably available to describe a particular thing is pressed into service."  *New Kids on the*

21    *Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  The nominative fair use standard

22    bars liability for an unauthorized use of a trademark where: (1) the product or service is not be

23    readily identifiable without use of mark; (2) only so much of the mark is used as is reasonably

24    necessary to identify the product or service; and (3) the user does nothing that would, in

25    conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.  *Id*.  All

26    three elements must be met for the defense to apply.  *See, e.g. Brother Records, Inc. v. Jardine,*

27    318 F.3d 900, 908 (9th Cir. 2003) overruled on other grounds in *Toyota Motor Sales, U.S.A. v.*

28    *Tabari*, 610 F.3d 1171 (9th Cir. 2010).  Defendants have not offered any evidence to meet these

8

1    elements.  Wildman can identify and describe his services without making use of the FGNA

2    Marks and has done so in identifying his services as "Frank Wildman Movement" and "Change

3    Your Age Method."  He has not offered evidence to support his contention that "there is no other

4    way to describe the public-domain body movement and principles" than the use of the term

5    "Feldenkrais."

6        The Court therefore finds the plaintiff has established a likelihood of success on its claim

7    that defendants' continued use of the FGNA Marks constitutes infringement upon FGNA's rights

8    in the FGNA Marks.

9        **B.      Irreparable Harm**

10       To establish a right to a preliminary injunction, a plaintiff must demonstrate "a significant

11   threat of irreparable injury." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999).

12   Evidence of lost business or business opportunities, as well as damage to goodwill, will satisfy the

13   requirement to show irreparable harm. *See, e.g., Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush*

14   *and Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("[e]vidence of threatened loss of prospective

15   customers or goodwill certainly supports a finding of the possibility of irreparable harm"); *Herb*

16   *Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence

17   of loss of control over business reputation and damage to goodwill could constitute irreparable

18   harm."). "A district court has considerable discretion in fashioning suitable relief and defining the

19   terms of an injunction." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir.

20   1991). "Injunctive relief, however, must be tailored to remedy the specific harm alleged." *Id.*

21       The Court finds that, as a result of defendants' conduct, FGNA is likely to suffer

22   immediate and irreparable harm loss, damage, and injury, unless FGNA's request for injunctive

23   relief is granted.  Defendants' unauthorized use of the FGNA Marks prevents FGNA from

24   controlling the quality of the services associated with its marks.  FGNA has received numerous

25   complaints about Wildman's ongoing use of the FGNA Marks, and his continuing to hold himself

26   out as being associated with FGNA. (Haller Decl. ¶ 36.)  Wildman's continued use of the FGNA

27   Marks is likely to result in harm loss of the value associated with the FGNA Marks and

28   reputational harm, as well as loss of goodwill with respect to FGNA's members.  These losses are

9

1    not readily compensable by an award of monetary damages.  Further, under the Agreement,

2    Wildman acknowledged that any breach would cause FGNA irreparable injury and that damages

3    would be an inadequate remedy in the event of such breach, such that injunctive relief would be

4    permissible for a breach or threatened breach by Wildman.  (Haller Decl., Exh. E § 19.)  This

5    factor favors injunctive relief.

6            **C.      Balance of Equities**

7            In determining the balance of equities, courts look to "the degree of harm that will be

8    suffered by the plaintiff or the defendant if the injunction is improperly granted or denied." *Scotts*

9    *Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (9th Cir. 2002); *accord Winter*, 555 U.S. at 24

10   (2008).  The balance of potential harm to defendants of being enjoined from use of the FGNA

11   Marks until a trial on the merits is far outweighed by the potential harm to FGNA, its goodwill,

12   and reputation associated with the FGNA Marks if a preliminary injunction order is not issued.

13   Defendants concede that Wildman did not comply with the terms of the Agreement timely.

14   Leaving aside any matters that may be in dispute between the parties, Wildman concedes that he

15   did not take down webpages that he knew were in clear violation of the Agreement, but instead

16   continued piecemeal efforts to edit the material well past the deadline, never taking down pages

17   with potential violations until the temporary restraining order herein issued.  (Wildman Decl.

18   ¶¶ 10-13.)  Wildman represents that the process of removing even those uses he acknowledges are

19   in violation of the Agreement is "time-consuming" and requires review of "hundreds of pages."

20   (*Id*. ¶ 11.)  In view of the hundreds of potential violations and improper uses of the FGNA Marks,

21   the equities favor a preliminary injunction, even if it requires Wildman to take down defendants'

22   websites entirely for a period of time.

23           The Court has set an expedited schedule, with a trial set to proceed a little over four

24   months from the filing of the complaint herein, in order to minimize the harms from a preliminary

25   injunction pending trial.  (Dkt. No. 36.)  In light of that, the balance of harms favors preliminary

26   granting injunctive relief.

27           //

28           //

10

1          **D.**      **Public Interest**

2          "The public interest inquiry primarily addresses [the] impact on non-parties rather than

3 parties." *Sammartano v. First Judicial District Court,* 303 F.3d 959, 974 (9th Cir. 2002). The

4 public interest will be served by the issuance of a temporary restraining order and preliminary

5 injunction, as the public has a strong interest in being free from confusion caused by the

6 unauthorized use of trademarks. *See Brookfield Communs.*, 174 F.3d at 1066 ("preliminary

7 injunctive relief is appropriate... to promote the public interest in protecting trademarks

8 generally"); *Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020, 1029 (C.D. Cal. 2011)

9 ("public has a strong interest in being free from the confusion caused by unauthorized use");

10 *Morrocanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1281 (C.D. Cal. 2008) (holding

11 the public has a "right not to be deceived or confused"). The public has a right to choose services

12 knowing that they are not being misled as to whether those services are offered by parties

13 authorized by FGNA to hold themselves out as being associated with the FGNA. The public

14 interest favors issuance of a preliminary injunction to protect the public from being harmed or

15 deceived by defendants representing their services as authorized by, certified by, endorsed by, or

16 associated with FGNA.

17          **E.**      **Security Requirement**

18          Under Rule 65(c) of the Federal Rules of Civil Procedure, no party may be granted a

19 preliminary injunction without first posting security "in an amount that the court considers proper

20 to pay the costs and damages sustained by any party found to have been wrongfully enjoined or

21 restrained." Fed. R. Civ. P. 65(c). Defendants did not submit any evidence or argument

22 concerning the appropriate amount of a bond. The Court therefore orders a nominal bond in the

23 amount of $5,000.00.

24   **IV.**     **CONCLUSION**

25          Based upon the foregoing, the Motion for Preliminary Injunction is **GRANTED**. The Court

26 **ORDERS** as follows:

27          (a)      Defendants Frank Wildman and Feldenkrais Movement Institute, their owners,

28 affiliates, officers, directors, managers, agents, servants, employees, and any and all persons in

active concert or participation with any of them (collectively "Enjoined Persons"), **SHALL NOT** use without the authorization of FGNA, any of FGNA's trademarks, service marks, certification marks, logos, and trade names, including, but not limited to, the marks "Feldenkrais," "Feldenkrais Method," "Functional Integration," "FI," "Awareness Through Movement," "ATM," "Guild Certified Feldenkrais Teacher," "GCFT" "Guild Certified Feldenkrais Practitioner," and "GCFP" (the "FGNA Marks") or any other name, logo, or mark that includes the designation "Feldenkrais" or that is confusingly or deceptively similar to any of the FGNA Marks, either alone or in conjunction with other words or symbols, as part of any trademark, service mark, certification mark, logo, trade name, corporate name, assumed name, domain name, website, email address, keywords, or metatags on or in relation to any goods or services marketed, promoted, advertised, sold, offered for sale or provided by the defendants, or in any other manner, including without limitation, any marketing literature, printed or electronic, on websites, on social media sites or on social networking sites.

   For purposes of clarification, this Order prohibits and enjoins:

     (1)  any Enjoined Person's use of the word "Feldenkrais" in any form other than as part of the phrase "Dr. Moshe Feldenkrais" in any marketing literature, printed or electronic, or in any online medium including social media, social networking sites, and any other website or application; and

     (2)  use of the word "Feldenkrais" in the website url or email address for any Enjoined Person; and

     (3)  use of the word "Feldenkrais" as part of the organizational name of defendant Feldenkrais Movement Institute.

   (b)  Defendants Frank Wildman and Feldenkrais Movement Institute, their owners, affiliates, officers, directors, managers, agents, servants, employees, and any and all persons in active concert or participation with any of them (collectively "Enjoined Persons"), **SHALL NOT** use, authorize, permit, or encourage others to use on either defendants' behalf, the FGNA Marks in any form or manner that would tend to associate defendants, or their business or services, with FGNA, including, without limitation, in the marketing, promotion, advertising, identification, sale,

or offer for sale of goods or services, or in any other manner.

(c)     FGNA shall place security in the amount of **$5,000.00** with the Court for the payment of any damages any person may be entitled to recover as a result of an improper or wrongful restraint ordered hereunder.  Proof of such undertaking shall be filed no later than **May 29, 2018**.

**IT IS SO ORDERED.**

Dated: May 23, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

13