1  TRAVIS WALL (SBN 191662)
   twall@hinshawlaw.com
2  HINSHAW & CULBERTSON LLP
3  One California Street, 18th Floor
   San Francisco, CA 94111
4  Telephone:   415-362-6000
   Facsimile:   415-834-9070
5
6  MARK K. SURI (IL SBN 6199636) *Pro Hac Vice*
   msuri@hinshawlaw.com
7  HINSHAW & CULBERTSON LLP
   151 North Franklin Street, Suite 2500
8  Chicago, IL, 60606
   Telephone:   312-704-3000
9  Facsimile:   312-704-3001

10 Attorneys for Plaintiff FELDENKRAIS GUILD OF NORTH AMERICA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FELDENKRAIS GUILD OF NORTH AMERICA, an Oregon Not-For-Profit Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK WILDMAN, an Individual, and FELDENKRAIS MOVEMENT INSTITUTE, a California Not-For-Profit Corporation,<br><br>Defendants. | Case No. 4:18-cv-02340-YGR<br><br>**STIPULATED FINAL JUDGMENT AND [PROPOSED] CONSENT ORDER** |

Plaintiff Feldenkrais Guild of North America ("FGNA") filed its complaint alleging trademark infringement and breach of contract, as well as its *ex parte* motion for a temporary restraining order and order to show cause for a preliminary injunction against defendants Frank Wildman ("Wildman") and Feldenkrais Movement Institute ("FMI"). Wildman and FMI are collectively referred to herein as "defendants." (Dkt. Nos. 1, 19.) On May 1, 2018, the Court granted the temporary restraining order and issued its Order to Show Cause Why A Preliminary Injunction Should Not Issue. (Dkt. No. 26.) The parties filed their response and reply (Dkt. Nos. 33 and 34), and the matter came on for hearing on May 15, 2018. On May 21, 2018, defendants filed their answer and counterclaim. (Dkt. No. 37). On May 23, 2018, the Court granted the Motion for Preliminary Injunction. (Dkt. No. 38.)

The parties have resolved their dispute and entered into a written Settlement Agreement. As part of the resolution of their dispute, the parties have stipulated to request that the Court enter this Final Judgment and Consent Order and to retain jurisdiction for purposes of enforcing the Settlement Agreement and this Final Judgment and Consent Order.

The Court, having read and considered the papers and pleadings on file, the evidence submitted in support and in opposition, and the arguments of the parties, the parties' stipulation to the Final Judgment and Consent Order and for the reasons stated herein, **GRANTS** and enters the Stipulated Final Judgment and Consent Order.

I.  **SUMMARY OF FACTS**

FGNA is a not-for-profit membership association that promotes and supports the Feldenkrais Method® of somatic education and its practitioners. (Declaration of Nancy Haller, ¶ 3) (Dkt. No. 19-1). The purposes of the FGNA include increasing public awareness of the Feldenkrais Method® of somatic education, certifying and providing opportunities for continuing education of practitioners, and protecting the quality of the Feldenkrais® work and research in the effectiveness of the Feldenkrais Method® of somatic education. (*Id.*) FGNA first began certifying Feldenkrais® practitioners in 1989. There are about 1300 current members of the FGNA, including over 1150 members offering services throughout the United States. (*Id.* ¶ 6.)

### A. FGNA's Trademarks, Service Marks, and Certification Marks

FGNA has been using certain trademarks since as early as the early 1970s, and first obtained trademark registrations covering certain marks in 1985. (*Id.* ¶ 4.) The United States Patent and Trademark Office have issued numerous federal trademark registrations to FGNA, set forth as follows:

| Mark | Registration No. | Date of Registration |
| --- | --- | --- |
| Feldenkrais | 1,374,266 | December 3, 1985 |
| Feldenkrais Method | 1,982,044 | June 25, 1996 |
| Guild Certified Feldenkrais Teacher | 2,187,073 | September 8, 1998 |
| Awareness Through Movement | 1,353,317 | August 6, 1985 |
| ATM | 4,011,600 | August 16, 2011 |
| Functional Integration | 1,286,531 | July 17, 1984 |
| FI | 4,184,962 | August 7, 2012 |

In addition, FGNA owns other trademarks, service marks, and certification marks. (Haller Decl. ¶10.) For example, FGNA owns the certification mark $GCFT^{CM}$, an acronym for Guild Certified Feldenkrais Teacher®, the certification mark Certified Feldenkrais Trainer$^{CM}$ and its acronym $CFT^{CM}$, as well as the certification mark Guild Certified Feldenkrais Practitioner$^{CM}$ and its acronym $GCFP^{CM}$. Relevant consumers recognize the use of these marks as certifying that the user is a qualified Feldenkrais® Practitioner or Teacher. (*Id.* ¶ 10.) All of the foregoing marks are collectively referred to herein as the "FGNA Marks."

FGNA regulates the quality of those persons holding themselves out as practitioners and trainers of the Feldenkrais Method® of somatic education by controlling the use of the marks. The FGNA has established rules for those who may use the FGNA Marks. (*Id.* ¶¶ 12-16; Exh. D FGNA Policy E2.4.2.1 FGNA Service Marks, Certification Marks and Trademarks, hereinafter "FGNA Marks Policy"). Guild Certified Feldenkrais Practitioners, FGNA Professional Members, and authorized trainees are granted licenses to use certain of the FGNA Marks, subject to enumerated

conditions in the FGNA Marks Policy. (*Id. ¶* 5.) To be eligible to use the FGNA Marks, persons must provide verification of graduation from a professional Feldenkrais Method® training program that has been accredited by FGNA or another recognized international board under approved policies; completion of a "crossover plan" approved by the North American Training Accreditation Board (an entity related to FGNA that is responsible for accrediting training programs); or have been granted an exception to those requirements by the FGNA Board of Directors. (*Id.* ¶ 13.) Members must complete: (i) continuing competence requirements, including self-assessment, creation of learning plan; (ii) twenty hours of appropriate continuing education annually; and (iii) 100 hours of professional practice annually. Members also must agree to comply with FGNA policies.[1] (*Id.* ¶¶ 14-15.) Finally, new members must complete the applicable form and pay the applicable fee. (*Id.* ¶ 16.)

Certified Feldenkrais® Practitioners are allowed to use its trademarks, service marks and certification marks in connection with educational services relating to somatic education, among other services. (*Id.* ¶ 4.) FGNA and its authorized licensees have continuously used the FGNA's trademarks, service marks and certification marks in connection with these services for several decades. (*Id.*) Only people personally trained by Dr. Feldenkrais, graduates of FGNA-accredited training programs, and others who have received authorization from FGNA are eligible to be certified by, to become members of FGNA, and to use the FGNA's trademarks, service marks and certification marks. (*Id.* ¶ 5.)

B. **Conduct of Wildman and Feldenkrais Movement Institute**

From 1978 to January 22, 2018, defendant Wildman was a FGNA member. He was certified by FGNA as a Feldenkrais® Practitioner and was authorized to use the FGNA Marks. He agreed and was obligated to abide by the FGNA code of conduct. Wildman was president of FGNA during 1997, and was the chair of the FGNA committee that wrote the FGNA standards of practice. (*Id.* ¶ 17.)

---

[1] *See* Haller Decl. Exh. D ("E2.3.2.1 The Feldenkrais Method® of Somatic Education Standards of Practice; E2.3.3.2 Code of Professional Conduct; and E2.4.2.1-ED FGNA Service Marks, Certification Marks and Trademarks.")

Wildman's relationship with the FGNA ended on January 22, 2018, when the FGNA and Wildman entered into a confidential agreement[2] amidst allegations of Wildman's misconduct. (Haller Decl., Exh. E, "the Agreement.") Under the four-page Agreement, Wildman acknowledged that he is no longer a FGNA member, a FGNA Certified Feldenkrais® Practitioner, nor a FGNA Certified Feldenkrais® Trainer. (*Id*. §§ 2-4.) Wildman agreed not to teach or practice the Feldenkrais® Method. (*Id*. § 8.) As of the effective date of the Agreement, Wildman agreed to "refrain from using any FGNA trademarks, service mark, or certification marks." (*Id*. § 5.) He agreed to "not represent himself or hold himself out as being certified, licensed, accredited by, or otherwise associated with, the FGNA, the Feldenkrais® Method, or any FGNA trademark, service mark, or certification mark." (*Id*.) The Agreement requires that Wildman refrain from all use of the FGNA Marks. (*Id*.) Under the Agreement, Wildman had until March 22, 2018, to make the changes required. (Haller Decl. ¶ 26.) By his own admission, Wildman failed to complete the changes. (Declaration of Frank Wildman, Dkt. No. 33-3, at ¶13.) This action ensued.

## II.  APPLICABLE STANDARD

The standards for granting permanent injunction relief are the same as those for granting preliminary injunction relief and the Court previously found that FGNA met the standards for receiving preliminary injunctive relief. (Dkt. No. 38). The plaintiff must show: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate [**18] to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See Facebook, Inc. v Power Ventures, Inc.,* citing *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 390, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). *See also,Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1054 (9th Cir. 2009).

---

[2] The parties have agreed to waive the confidentiality provision of the Agreement.

## III. DISCUSSION AND FINDINGS

### A. Breach of Contract

As to the breach of contract claims, Wildman concedes that he failed to make all the changes required under the Agreement. (Oppo. at 1:3-4; 4:4-6; Wildman Decl. ¶ 13.) By the time of the application for the temporary restraining order, Wildman and his assistant were only able to remove or revise 70% of the items identified by FGNA's counsel as being in violation of the Agreement. (Wildman Decl. ¶ 13.)

Wildman owns, operates, produces, and manages a website at the url FeldenkraisInstitute.org, and is responsible for all content on the website. (Haller Decl. ¶ 26.) Wildman uses this website to market and promote himself and FMI. The required changes to his website at FeldenkraisInstitute.org have not been made and it continues to contain numerous unauthorized uses of the FGNA Marks. Wildman is also the owner, operator, producer and manager of a website at the url "FrankWildmanMovement.com," which he uses to market and promote himself and his business. Wildman has made some required changes to his website at FrankWildmanMovement.com, but not all, such that the website continues to include unauthorized uses of the FGNA Marks. (*Id*. ¶ 27.) Wildman also markets and promotes himself through various social media and social networking platforms such as Facebook, YouTube, and LinkedIn.

Each of Wildman's pages on these social media and social networking platforms continue to contain numerous unauthorized uses of the FGNA Marks. (*Id*. ¶ 28.)[3] In addition, Wildman has failed to remove FGNA Marks from his biography for purposes of promotion of himself and his business. For instance, Wildman's biography for a 1440 Multiversity program states that he is a "Feldenkrais Method® expert," and uses the Feldenkrais Method® trademark five times in one paragraph. By his continued use of the FGNA Marks, Wildman is in violation of the parties'

---

[3] The evidence is sufficient to establish that Wildman breached the contract by continuing to use the marks, including: Wildman's own concession of continued unauthorized use; and the declaration of Nancy Haller, which represented based on personal knowledge that as of the date of the declaration, the enumerated unauthorized uses continued on the social media and social networking platforms used by Wildman. (Haller Decl. ¶¶ 1, 28.)

Agreement.[4]

The Agreement precludes Wildman from "teaching or engaging in the professional practice of the Feldenkrais® Method." It does not prohibit Wildman from teaching or engaging in any professional practice so long as he does not represent that practice to be "the Feldenkrais® Method."

Thus, the Court concludes that plaintiff prevails on the merits of its breach of contract claim.

**B.    Trademark Infringement**

In addition, the Court finds that defendants are infringing on plaintiff's trademark rights. Based upon the record before the Court, defendants' continued use of the FGNA Marks constitutes trademark infringement. To succeed on its claim of trademark infringement, FGNA must demonstrate: (1) ownership of a valid and protectable trademark; and (2) defendants' use of the mark is likely to cause consumer confusion, thereby infringing on the plaintiff's rights. *Aurora World, Inc. v. Ty Inc.*, 719 F.Supp.2d 1115, 1141 (C.D. Cal. 2009) (quoting *Dep't of Parks & Rec. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)). When, as here, two marks are identical and used for the same goods, courts have found that the likelihood of confusion is overwhelming, even if no other factors favor a finding of confusion. *Brookfield Communs., Inc. v. W. Coast Ent't. Corp.*, 174 F.3d 1036, 1056 (9th Cir 1999); *see also Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir. 1986) (reversing district court's finding of no likelihood of confusion given "the overwhelming likelihood of confusion resulting from the direct competition of pens with virtually identical marks").[5] Further, use of the same marketing channels "increase[s] the likelihood of

---

[4] Whether or not FMI is a party to the Agreement, or is an alter ego of Wildman, FMI is responsible for its acts of infringement. Use of the FGNA Marks without authorization, in a manner that is likely to cause consumer confusion, results in trademark infringement. FMI derived its rights to use the FGNA Marks solely from Wildman. When Wildman was authorized to use the FGNA Marks, that license also was applicable to FMI. Consequently, when Wildman gave up his license to use the FGNA Marks, FMI could no longer use the FGNA Marks based upon Wildman's membership. FMI did not have a license or other right to use the FGNA Marks independent of Wildman's rights to use them under the FGNA Service Marks Policy.

[5] The Ninth Circuit has developed an eight-factor test to guide the determination of a likelihood of confusion. *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979) ("*Sleekcraft*"). "The *Sleekcraft* factors are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 3d 1137, 1145 (9th Cir. 2011) (citations omitted). Given that the marks at issue here are identical and are being

confusion." *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987) (citing *Sleekcraft,* 599 F.2d at 353).

The facts of ownership here are not contested. FGNA asserts, and defendants do not dispute, that each of its registrations for trademarks are current, presumed valid, in force, and incontestable under 15 U.S.C. section 1065. All of the FGNA Marks at issue were in existence and in use at the time Wildman was the president of FGNA, and many had been in use or registered many years before he was president. Similarly undisputed is FGNA's contention that all of its claimed marks, whether trademarks, service marks, certification marks or related common law marks, regardless of registration, have acquired significant good will through the extensive and widespread use. They are distinctive as a source identifier and certification indicator in connection with the FGNA providing of services and licensing of others to use its marks in connection with the services identified in those registrations and as indicating that the user has met the FGNA's rigorous requirements. FGNA has invested significant resources to advertise its and its licensee's educational services offered in connection with the FGNA Marks. FGNA is the beneficiary of many third party stories and articles providing significant and positive press coverage to the FGNA services resulting in the development of significant goodwill for the FGNA Marks.

The facts regarding confusion are likewise not in contention. Defendants' services are nearly identical to those of FGNA's and its licensees, and both are marketed and promoted through the Internet, key word searching, social media and social networking platforms and direct mail. The record before the Court indicates that defendants are using marks identical to the FGNA Marks to promote services that are the same services FGNA promotes, licenses, or certifies. (Haller Dec. ¶ 33.) Consequently, the parties are in direct competition with each other.

Any argument that defendants are not liable for trademark infringement because they are simply making "fair use" of the trademarks in their webpages and other marketing materials is incorrect. A nominative fair use is one that "does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one . . . [but instead is a use] where the only

---

used for nearly identical services, and that defendants do no contest the *Sleekcraft* factors in opposition, the Court does not analyze the showing on each factor in reaching the decision herein.

8
STIPULATED FINAL JUDGMENT AND [PROPOSED] CONSENT ORDER
Case No. 4:18-cv-02340-YGR

word reasonably available to describe a particular thing is pressed into service." *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). The nominative fair use standard bars liability for an unauthorized use of a trademark where: (1) the product or service is not be readily identifiable without use of mark; (2) only so much of the mark is used as is reasonably necessary to identify the product or service; and (3) the user does nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Id*. All three elements must be met for the defense to apply. *See, e.g. Brother Records, Inc. v. Jardine,* 318 F.3d 900, 908 (9th Cir. 2003) overruled on other grounds in *Toyota Motor Sales, U.S.A. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010). Wildman can identify and describe his services without making use of the FGNA Marks and has done so in identifying his services as "Frank Wildman Movement" and "Change Your Age Method." Thus, there are other ways to describe the public-domain body movement and principles than the use of the term "Feldenkrais."

The Court therefore finds the plaintiff has established that defendants' continued use of the FGNA Marks constitutes infringement upon FGNA's rights in the FGNA Marks.

### C. <u>Irreparable Harm</u>

To establish a right to a permanent injunction, a plaintiff must demonstrate irreparable injury. *eBay,* 542 U.S. at __; *Flexible Lifeline Sys. v. Precision Lift Inc.*, 654 F.3d 989, 998 (9th Cir. 2011); *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249-50 (9th Cir. 2013). Evidence of lost business or business opportunities, as well as damage to goodwill, will satisfy the requirement to show irreparable harm. *See, e.g., Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm"); *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm."). "A district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). "Injunctive relief, however, must be tailored to remedy the specific harm alleged." *Id.*

The Court finds that, as a result of defendants' conduct, FGNA is suffering immediate and

irreparable harm loss, damage, and injury, unless FGNA's request for injunctive relief is granted. Defendants' unauthorized use of the FGNA Marks prevents FGNA from controlling the quality of the services associated with its marks. FGNA has received numerous complaints about Wildman's ongoing use of the FGNA Marks, and his continuing to hold himself out as being associated with FGNA. (Haller Decl. ¶ 36.) Wildman's continued use of the FGNA Marks is likely to result in harm, loss of the value associated with the FGNA Marks and reputational harm, as well as loss of goodwill with respect to FGNA's members. These losses are not readily compensable by an award of monetary damages. Further, under the Agreement, Wildman acknowledged that any breach would cause FGNA irreparable injury and that damages would be an inadequate remedy in the event of such breach, such that injunctive relief would be permissible for a breach or threatened breach by Wildman. (Haller Decl., Exh. E § 19.) This factor favors injunctive relief.

### D. Balance of Equities

In determining the balance of equities, courts look to "the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (9th Cir. 2002); *accord Winter*, 555 U.S. at 24 (2008). The balance of potential harm to defendants of being enjoined from use of the FGNA Marks is far outweighed by the potential harm to FGNA, its goodwill, and reputation associated with the FGNA Marks if a permanent injunction order is not issued. Defendants concede that Wildman did not comply with the terms of the Agreement timely. Wildman concedes that he did not take down webpages that he knew were in clear violation of the Agreement, but instead continued piecemeal efforts to edit the material well past the deadline, never taking down pages with potential violations until the temporary restraining order herein issued. (Wildman Decl. ¶¶ 10-13.) Wildman represents that the process of removing even those uses he acknowledges are in violation of the Agreement is "time-consuming" and requires review of "hundreds of pages." (*Id*. ¶ 11.) In view of the hundreds of potential violations and improper uses of the FGNA Marks, the equities favor a permanent injunction, even if it requires Wildman to take down defendants' websites entirely for a period of time.

The balance of harms favors granting permanent injunctive relief.

### E. Public Interest

"The public interest inquiry primarily addresses [the] impact on non-parties rather than parties." *Sammartano v. First Judicial District Court,* 303 F.3d 959, 974 (9th Cir. 2002). The public interest will be served by the issuance of a temporary restraining order and preliminary and permanent injunction, as the public has a strong interest in being free from confusion caused by the unauthorized use of trademarks. *See Brookfield Communs.*, 174 F.3d at 1066 ("preliminary injunctive relief is appropriate. . . to promote the public interest in protecting trademarks generally"); *Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020, 1029 (C.D. Cal. 2011) ("public has a strong interest in being free from the confusion caused by unauthorized use"); *Morrocanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1281 (C.D. Cal. 2008) (holding the public has a "right not to be deceived or confused"). The public has a right to choose services knowing that they are not being misled as to whether those services are offered by parties authorized by FGNA to hold themselves out as being associated with the FGNA. The public interest favors issuance of a permanent injunction to protect the public from being harmed or deceived by defendants representing their services as authorized by, certified by, endorsed by, or associated with FGNA.

### F. Settlement

The parties have advised the Court that they have resolved their dispute and entered into a written Settlement Agreement that supersedes the January 22, 2018 Agreement referred to herein. As part of their resolution, the parties have stipulated to the entry of this Final Judgment and Consent Order. In addition, the parties advise further the Court the following:

Over the past four years, defendants have conducted a certain Feldenkrais® training program in the state of Oregon, referred to as the Eugene Training. Wildman was the educational director of the Eugene Training, and has resigned that role. The Eugene Training is almost concluded, but there are two more billing cycles to complete. In the Settlement Agreement, the parties' stipulated that defendants shall be permitted to use the name "Feldenkrais Movement Institute" solely for purposes of sending out two (2) billings for the Eugene Training and to receive funds at a PayPal account that uses the name "Feldenkrais Movement Institute." This is reflected in the proposed order below.

## IV. CONCLUSION

Based upon the foregoing, the Stipulated Final Judgment and Consent Order is **GRANTED**. The Court **ORDERS** as follows:

(a) Defendants Frank Wildman and Feldenkrais Movement Institute, their owners, affiliates, officers, directors, managers, agents, servants, employees, and any and all persons in active concert or participation with any of them (collectively "Enjoined Persons"), **SHALL NOT** use, without FGNA's prior authorization, the FGNA's Marks or any other name, logo, or mark that includes the designation "Feldenkrais" or that is confusingly or deceptively similar to any of the FGNA Marks, either alone or in conjunction with other words or symbols, as part of any trademark, service mark, certification mark, logo, trade name, corporate name, assumed name, domain name, website, email address, keywords, or metatags on or in relation to any goods or services marketed, promoted, advertised, sold, offered for sale or consignment or provided by the defendants, directly or indirectly, or in any other manner, including without limitation, any marketing literature, printed or electronic, on websites, on social media sites or on social networking sites.

For purposes of clarification, this Order prohibits and enjoins:

(1) any Enjoined Person's use of the word "Feldenkrais" in any form other than as part of the phrase "Dr. Moshe Feldenkrais" in any marketing literature, printed or electronic, or in any online medium including social media, social networking sites, and any other website or application; and

(2) use of the word "Feldenkrais" in the website url or email address for any Enjoined Person; and

(3) use of the word "Feldenkrais" as part of the organizational name of defendant Feldenkrais Movement Institute.

(b) Defendants Frank Wildman and Feldenkrais Movement Institute, their owners, affiliates, officers, directors, managers, agents, servants, employees, and any and all persons in active concert or participation with any of them (collectively "Enjoined Persons"), **SHALL NOT** use, authorize, permit, or encourage others to use on either defendants' behalf, without the prior authorization of FGNA, the FGNA Marks in any form or manner that would tend to associate

defendants, or their business or services, with FGNA, including, without limitation, in the marketing, promotion, advertising, identification, sale, or offer for sale of goods or services, or in any other manner.

(c) Notwithstanding the foregoing, the Enjoined Persons are permitted to send out two electronic mailings under the name Feldenkrais Movement Institute to send invoices and to receive and collect payment for the "Eugene Training." These electronic mailings are to be made in June and July, 2018. If not paid, some of those invoices may need to be and can be rebilled up to and until September 21, 2018, which is the final day of the training program. The PayPal account that currently uses the name Feldenkrais Movement Institute shall have its name changed to remove Feldenkrais therefrom after the Eugene Training billing is concluded, but no later than October 1, 2018.

(d) The injunctive orders set forth in (a) through (c) above shall remain in force and effect until defendant Frank Wildman regains his FGNA Feldenkrais Practitioner certification or Feldenkrais Trainer certification.

(e) The Court retains jurisdiction to enforce the terms of the parties' Settlement Agreement and the terms of this Stipulated Final Judgment and Consent Order. The terms of this Stipulated Final Judgment and Consent Order may be enforced by a motion for contempt. If the Court grants such a motion, defendants may be ordered to pay FGNA's costs, reasonable attorneys' and experts' fees

(f) The Clerk is ordered to release to FGNA all security FGNA has placed with the Court.

(g) Subject to the foregoing, the complaint and counterclaim are hereby dismissed.

Dated August 1, 2018          HINSHAW & CULBERTSON LLP

By: */s/ Travis Wall*
TRAVIS WALL
MARK K. SURI *Pro Hac Vice*
Attorneys for Plaintiff FELDENKRAIS
GUILD OF NORTH AMERICA

LAW OFFICE OF LAWRENCE G. TOWNSEND, ESQ.

By: */s/ Lawrence G. Townsend*
LAWRENCE G. TOWNSEND

Attorneys for Defendants FRANK WILDMAN and FELDENKRAIS MOVEMENT INSTITUTE

**FILER'S ATTESTATION**

I, Travis Wall, am the ECF user whose identification and password are being used to file this [Proposed] STIPULATED FINAL JUDGEMENT AND CONSENT ORDER. In compliance with Local Rules, I hereby attest that all party signatories hereto concur in this filing.

*/s/Travis Wall*
TRAVIS WALL

# [~~PROPOSED~~] CONSENT ORDER

Based the Stipulated Final Judgment and Consent Order is GRANTED. The Court ORDERS as follows:

(a) Defendants Frank Wildman and Feldenkrais Movement Institute, their owners, affiliates, officers, directors, managers, agents, servants, employees, and any and all persons in active concert or participation with any of them (collectively "Enjoined Persons"), SHALL NOT use, without FGNA's prior authorization, the FGNA's Marks or any other name, logo, or mark that includes the designation "Feldenkrais" or that is confusingly or deceptively similar to any of the FGNA Marks, either alone or in conjunction with other words or symbols, as part of any trademark, service mark, certification mark, logo, trade name, corporate name, assumed name, domain name, website, email address, keywords, or metatags on or in relation to any goods or services marketed, promoted, advertised, sold, offered for sale or consignment or provided by the defendants, directly or indirectly, or in any other manner, including without limitation, any marketing literature, printed or electronic, on websites, on social media sites or on social networking sites.

For purposes of clarification, this Order prohibits and enjoins:

(1) any Enjoined Person's use of the word "Feldenkrais" in any form other than as part of the phrase "Dr. Moshe Feldenkrais" in any marketing literature, printed or electronic, or in any online medium including social media, social networking sites, and any other website or application; and

(2) use of the word "Feldenkrais" in the website url or email address for any Enjoined Person; and

(3) use of the word "Feldenkrais" as part of the organizational name of defendant Feldenkrais Movement Institute.

(b) Defendants Frank Wildman and Feldenkrais Movement Institute, their owners, affiliates, officers, directors, managers, agents, servants, employees, and any and all persons in active concert or participation with any of them (collectively "Enjoined Persons"), SHALL NOT use, authorize, permit, or encourage others to use on either defendants' behalf, without the prior authorization of FGNA, the FGNA Marks in any form or manner that would tend to associate

defendants, or their business or services, with FGNA, including, without limitation, in the marketing, promotion, advertising, identification, sale, or offer for sale of goods or services, or in any other manner.

(c) Notwithstanding the foregoing, the Enjoined Persons are permitted to send out two electronic mailings under the name Feldenkrais Movement Institute to send invoices and to receive and collect payment for the "Eugene Training." These electronic mailings are to be made in June and July, 2018. If not paid, some of those invoices may need to be and can be rebilled up to and until September 21, 2018, which is the final day of the training program. The PayPal account that currently uses the name Feldenkrais Movement Institute shall have its name changed to remove Feldenkrais therefrom after the Eugene Training billing is concluded, but no later than October 1, 2018.

(d) The injunctive orders set forth in (a) through (c) above shall remain in force and effect until defendant Frank Wildman regains his FGNA Feldenkrais Practitioner certification or Feldenkrais Trainer certification.

(e) The Court retains jurisdiction to enforce the terms of the parties' Settlement Agreement and the terms of this Stipulated Final Judgment and Consent Order. The terms of this Stipulated Final Judgment and Consent Order may be enforced by a motion for contempt. If the Court grants such a motion, defendants may be ordered to pay FGNA's costs, reasonable attorneys' and experts' fees.

(f) All security bonds placed by FGNA in this matter shall be released to FGNA. (See Dkt. Nos. 31, 39.)

(g) Subject to the foregoing, the complaint and counterclaim are hereby DISMISSED.

**IT IS SO ORDERED.**

Dated August 6, 2018

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE